JOHN H. DRESLER, Respondent, *v.* GEORGE M. HARD et al. Appellants.

Where, in the date of a receipt, the month was abbreviated and it was a matter in dispute as to whether the abbreviation was intended for January or July, *held*, that it was competent for an expert in handwriting, after comparison of the abbreviation in question with similar abbreviations in writings of the person who wrote the receipt, to give his opinion as a witness as to the month intended by the abbreviation, and that the rejection of such evidence was error requiring a reversal.

*Dresler* v. *Hard* (25 J. & S. 192), reversed.

(Argued April 27, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 1, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Daniel P. Hays* for appellants.   The court erred in refusing to allow the witness Carvalho to examine the receipt offered in evidence, and testify as to whether the date was January or July.  (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 429; *Miles* v. *Loomis*, 75 id. 288; *Sheldon* v. *Benham*, 4 Hill, 131; *Stone* v. *Hubbard*, 7 Cush. 595; *Masters* v. *Masters*, 1 P. Wms. 425; *Vinton* v. *Peck*, 14 Mich. 290.)   It was also error for the judge to exclude from the jury the question as to whether the plaintiff was estopped from making any claim against defendant Hard by reason of his standing by and permitting Hard to make and carry out a settlement with the assignee of Blauvelt.  (*Rogers* v. *King*, 66 Barb. 496; *W. C. Co.* v. *Hathaway*, 8 Wend. 482; *People* v. *R. T. Co.*, 23 id. 230; Baylies on Code Pleading, 238.)

*Isaac L. Egbert* for respondent.   The exception insisted upon by the appellants, who contend that they were entitled to have the expert Carvalho state his opinion to the jury with reference to the date on the receipt, is untenable.   Such opinion was properly excluded by the trial judge.   This was not a case of disputed writing, and there is no rule of law under which the proposed testimony would be permissible.  (Laws of 1888, chap. 555; *Peck* v. *Callahan*, 95 N. Y. 73; *Miles* v. *Loomis*, 75 id. 288.)   The refusal to charge as to the alleged estoppel was proper.  (Code Civ. Pro. § 500, subd. 2.)

POTTER, J.   A statement of the facts which, it seems to me, must control the decision of the appeal in this case may be very brief.   The action was brought by plaintiff to recover

of defendants the moneys paid by him to them from time to time towards the purchase-price of one thousand shares of the stock of the Manhattan Refining Company, but which the defendants refused or failed to deliver pursuant to their obligations.

The contract to purchase the particular block of stock in question was made about the 1st of November, 1880. It was not questioned upon the trial but that the plaintiff had contracted to purchase of defendants two other similar blocks of stock; one in September, 1880, and before, and one in March, 1881, and after, the purchase in question. The practical contention of the plaintiff was that while the stocks purchased in September and March had been delivered, the stock purchased in November had not been delivered. The contention of the defendants was that the stock purchased in November had been delivered. Upon the trial, the plaintiff introduced his own and other evidence tending to establish the contention upon his behalf. The defendants, in support of their contention, introduced a receipt of which the following is a copy:

"NEW YORK AGENCY, *Juy* 22, 1881.

" I have this day received from Jas. H. Blauvelt stock certificate No. 122 & 121 of the Manhattan Refining Company, which I have paid part cash and notes.
                    "JOHN H. DRESLER."

A dispute thereupon arose whether the date of the receipt was January or July (1881).

The force and pertinency of the date of the receipt was clearly recognized in the charge of the learned trial judge and in the opinion of the General Term.

The receipt proves the delivery of two blocks of stock. The plaintiff in his testimony proves the delivery of two blocks of stock, but says the two blocks delivered were the purchases made in September and March.

The defendants contend that the two blocks, the delivery of which are evidenced by the receipt, were the blocks purchased in September and November. If, therefore, the date of the

receipt is January, it must refer to the purchases made in September and November, for the third purchase was not made till March succeeding January (1881).

Various papers relating to the transactions between plaintiff and the defendant Blauvelt in the handwriting of the latter, were put in evidence, and among others a note bearing the date of the word "Jany" (1886). It was conceded that the receipt in question was in the handwriting of the defendant Blauvelt.

The defendant called an expert to show that the date of the receipt was "January" and not "July." For that purpose the plaintiff asked this question : " Q. Will you state from the examination which you have made of Exhibit B. and of the comparison you have made between the handwriting of that and the handwriting on these other exhibits in Mr. Blauvelt's handwriting, what your opinion is with reference to that date on that paper ? "

This question was objected to by the plaintiff, but not upon any specific ground. The court excluded the question manifestly upon the ground that the question calls for the opinion of the witness as to what the word or characters mean.

To make the point of the proposed evidence and ruling more precise, the defendants' counsel asked this question : " Q. I ask you to compare it with the exhibit you have in your hand, and then I desire to ask the question again, whether in your opinion the word written at the heading of defendants' Exhibit B. in the place of the date, is January, or July," which, upon plaintiff's objection, was also excluded. The defendants' counsel excepted to the rulings.

We think the learned trial judge erred in excluding the evidence. We will assume, as stated in the language of the court, that the object of the proof was to show by the witness what the words and characters indicating the date of the receipt were.

The principle involved is whether it may be shown what the word in a written instrument is. To a person or a juror (if we may suppose the latter case), who can neither read or

write, it is indispensable that some one who can should be allowed to testify what the words are. This course would be necessary in such case, however plainly written or printed the word might be.

Upon the same principle it is allowable for the jurymen who are perhaps only moderately skilled in letters and words, to determine what the letters and characters are and what word they make. The jurors may do this from the knowledge they already possess and such as they gain during the trial by the reading and the comparison they make with other writings already introduced in evidence. Indeed the court held in the opinion in this case at General Term that the jury might compare the receipt in question with the dates and letters in the note and the other writings to determine the date of the receipt. If such comparison may be made by unskilled jurymen, why should they not be aided and enlightened as they may be in analogous cases of the genuiness of handwriting, alterations and assimilations by men who have made the subject of handwriting a study and have obtained skill and proficiency in that branch of knowledge. As no objection was made that the witness was incompetent, it must be assumed that he was qualified as an expert to give his opinion and the grounds of it in aid of the jury. (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424–429 and the cases there cited; *Masters* v. *Masters*, 1 P. Williams, 425; Rogers on Expert Testimony, § 128.)

If we analyze the practical processes which have to be gone through with in order to elicit and apply this kind of evidence, whether from experts or lay witnesses, we shall find that the witness is required to examine and determine what the letters and characters or even hieroglyphics are and what word they form in combination. The word thus formed may be in a native or foreign language and if it is foreign, then another process is yet to be gone through with before it can reach the apprehension of the lay mind and that is, to interpret its meaning into the native language of the juror. The testimony of expert witnesses frequently exemplify one or both of these

processes and are of common use in the investigations carried on in courts of justice and in other avocations. It often becomes necessary and pertinent in judicial proceedings to introduce foreign laws and to interpret their meaning to the comprehension of the juror not familiar with the foreign language.

We think these views are abundantly supported by adjudicated cases. In *Sheldon* v. *Benham* (4 Hill, 129–131) a skilled bookkeeper was allowed to show the words indicated and the meaning of certain characters and abbreviations of entries made by a deceased officer of the bank. In the opinion in that case Judge Bronson says : " I see no objection to the testimony of the bookkeeper in relation to these memoranda. He was not called to give a construction or to declare the legal effect of a written instrument ; but, as a person skilled in such matters, to tell the jury what words these short entries stood for. It is not unlike the case of an instrument written in a foreign tongue, where a translator may be called in to tell the jury how the instrument reads."

" Where the difficulty arises from the obscurity of the writing itself, *e. g.*, if it be illegible from lapse of time, accident, etc., one skilled in deciphering may be called ; as, for instance, a clerk from the post office. (Greenl. Eq. Ev. 198, 9 ; Cowen & Hill's Notes to Phil. Ev. 1419.)

" The very point arose in *Armstrong* v. *Burrows* (6 Watts Rep. 266). There the parties on a trial in the Common Pleas, differed about the date of a receipt, which had been rendered illegible ; the one contending that it was dated 1823, and the other that the date was 1824."

In *Vinton* v. *Peck* (14 Mich. 287–290), the question was whether the note had been altered from "eight" to "eighty ;" an expert engraver was allowed to testify from comparison with the genuine writing, whether an " 8 " was altered from a " 3." In that case the court said : "It is very true that the jury may examine a paper for themselves, and that opinions are not usually admissible where the jury form their own conclusions unaided. But we do not think it would be safe in

this country to adopt a rule which assumes such a degree of knowledge and skill among jurors. Even reasonably expert writers may obtain valuable aid from experience in such questions, as neither law nor custom requires our jurors to meet any standard of education. We think to exclude such aid would lead to absurd results. The most enlightened courts have availed themselves of such assistance, and we deem it wise to use it in all cases where it is at hand. It can do no harm, and at all events must often be indispensable to justice."

In the case of *Stone* v. *Hubbard* (7 Cush. 595), it was held in a case where the date of a note was doubtful, it being uncertain as to whether the last figure was a 4 or a 2, the plaintiff was entitled to call experts and ask their opinion for the purpose of aiding the court and jury in arriving at a true reading of the document.

Expert testimony upon the same subject as in this case as to whether the figure was an 8 or a 3, was admitted in the case of *Norman* v. *Morrell* (4 Vesey, 770).

Having reached the conclusion that a new trial must be granted for the error in excluding the testimony of the expert we do not express any opinion upon the other questions raised upon the appeal.

The judgment should be reversed and a new trial granted with costs to abide the event.

All concur.

Judgment reversed.